UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| Ross Termaat, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. -CV- |
| | ) | HON. |
| Edward Rose & Sons, LLC | ) | |
| Defendants. | ) | **COMPLAINT** |
| _____ | | |

In support of his Complaint, the plaintiff, by counsel, states the following:

## JURISDICTION AND VENUE

1. The plaintiff, Ross Termaat, is a resident of the State of Michigan, County of Kalamazoo, Michigan with the address 9165 Alidor Street, Schoolcraft, Michigan 49087.

2. The defendant, Edward Rose & Sons, LLC, (hereinafter "Edward Rose," or "defendant"), is a domestic for profit corporation organized under the laws of the State of Michigan with a regional office address of 6101 Newport Rd., Portage, Michigan 49002 and a corporate office address of 38525 Woodward Avenue, Bloomfield Hills, MI 48303-2011. The defendant engages in continuous general business activities in this State and in Kalamazoo County.

3. The Court has original jurisdiction over the subject matter and the parties to this Complaint.

4. The amount in controversy exceeds $75,000.

5. Venue is appropriate because the activities giving rise to this Complaint occurred in Kalamazoo County, State of Michigan.

## FACTS AND PRESENT CONTROVERSY

### COUNT I – WRONGFUL DISCHARGE
### AND RETALIATION FOR OPPOSING UNLAWFUL DISCRIMINATION
### (WHISTLEBLOWER)

6.     Ross Termaat was hired on March 22, 2004 by Edward Rose & Sons (the "employer"). He became the salaried Resident Manager for Walnut Trail Apartments property located in Portage, Michigan in 2011.

7.     From the time of plaintiff's hire to the date he was terminated (August 7, 2015), the plaintiff received "good" or "very good" written employee reviews from the employer and his work was never questioned by management or employees.

8.     On or about July 9, 2015, immediately subsequent to a good performance review, the plaintiff reported unacceptable behavior by two of his Caucasian employees towards two other minority co-workers. The plaintiff believed and reported to the company that the unacceptable behavior was motivated by the victimized employees' race, religion, and national origin. Plaintiff complained to management when Caucasian employees called the black employee "worthless and no good," "stupid," "ghetto," and made fun of the black employees hair and mannerisms. White employees were not treated this way and management did not respond to the plaintiff's concerns.

9.     On or about July 19, 2015, after unsuccessful efforts to get the employer to take action, the plaintiff filed paperwork with the EEOC complaining of the unfair treatment towards the two co-workers. The plaintiff also sent an email to the National Whistleblowers Center on July 17, 2015.

10.    Subsequent to reporting the discriminatory treatment by defendants, the plaintiff was harassed by his supervisor, Jennifer Creek,  (hereinafter, the "supervisor"), and others under the supervisor's influence, including the plaintiff's subordinates, and was ultimately discharged to wit:

   a. As a resident manager, the plaintiff lived in an apartment on site. The supervisor caused his apartment to be listed as vacant as a way to intimidate the plaintiff.

   b. The plaintiff was treated poorly when he complained that the corporate office, which held all "white" senior managers, was being referred to as the "white house."

c. When the plaintiff was hired as resident manager, there were no minority employees. When the plaintiff hired a Chinese, non-Christian individual and attempted to offer assistance to another African American employee who was recently hired, the other white employees and the plaintiff's supervisor subjected the plaintiff to increased scrutiny and poor treatment, began intentionally causing disturbances between the plaintiff and his subordinates, began questioning the plaintiff's every action, and caused the plaintiff to fear for his job. The supervisor's actions caused the plaintiff to believe that she was attempting to cause him stress and to cause him to resign.

## COUNT II – VIOLATION OF FMLA

11. The plaintiff re-alleges and incorporates paragraphs 1-10 in support of his claims.

12. In mid-2015, the plaintiff sought treatment for anxiety and depression. The plaintiff requested FMLA leave and took a leave of absence for his condition upon the recommendation of a doctor.

13. The plaintiff's conditions were known to the employer since 2011 when he took FMLA leave for the same conditions.

14. Upon return from FMLA leave in June of 2015, the plaintiff's supervisor harassed the plaintiff and retaliated against him for taking his requested leave. In fact, the supervisor made attempts to exacerbate the plaintiff's condition and encouraged others to do so as well. The plaintiff's anxiety and depression, as a result, worsened.

15. The plaintiff's anxiety and depression severely limited his ability to interact well with some of his colleagues and the supervisor's attempts to exacerbate his condition increasingly affected his relationships with others at work.

16. The defendant continued to list the plaintiff's apartment as vacant in retaliation for his FMLA leave and as a way to harass the plaintiff.

## COUNT III – HARASSMENT (HOSTILE WORK ENVIRONMENT) AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

17. The plaintiff re-alleges and incorporates paragraphs 1-16.

18.     The plaintiff's anxiety and depression was made known to other employees by the plaintiff's supervisor.

19.     The supervisor and other employees aware of the plaintiff's condition who did not agree with the plaintiff's management style used knowledge of the plaintiff's health condition as a way to harass him and made work conditions intolerable.

20.     The supervisor deliberately caused the plaintiff to become extremely emotionally upset knowing that his condition made him more susceptible to upset feelings.

21.     The plaintiff began feeling as though he would have an emotional breakdown due to the actions of the defendant/supervisor.

22.     The defendants' actions were extreme and outrageous, beyond the bounds of acceptable conduct in a civilized society;

Intended to, or could reasonably be foreseen to, cause a reasonable person serious emotional trauma; and actually caused severe and serious emotional distress for the plaintiff.

23.     Due to the actions of defendant, the plaintiff was fearful that he would lose his job and that other people would continue to increase his levels of anxiety and depression, was humiliated by his supervisor and other employees, and worried that he might have a mental breakdown.

24.      The emotional distress caused by the defendant and by defendants' representatives made it difficult for the plaintiff to function in business and personal relationships and caused him to become angry and increasingly saddened.

   COUNT IV – VIOLATION OF THE ADA (AMERICANS WITH DISABILITIES ACT)

25.     The plaintiff re-alleges and incorporates paragraphs 1-24.

26.     The plaintiff suffered from anxiety and depression disorder and his employer, the defendant, was aware of his need for special accommodation because his disorder had been heavily documented in his personnel file.

4

27.     The defendant/supervisor knew that subjecting the plaintiff to increased scrutiny, fear of losing his job, listing his apartment on the vacancy list, and encouragement by the supervisor to other employees to make the plaintiff's job more difficult, would cause the plaintiff's disorder to worsen but intentionally engaged in the above mentioned activities to no avail.

28.     The plaintiff's disorders made it difficult to interact with others and he suffered a breakdown.

29.     The plaintiff was reprimanded by his supervisor for taking allowable PTO (paid time off) when he took some days off when his anxiety was high and he needed a break.

30.     The plaintiff was ultimately discharged and his termination paperwork lists the following as the reason: *"Unprofessional conduct." "Ross has lost the respect of his employees. Many are looking for other employment or are unhappy with their job due to their supervisor's behavior. Ross cannot effectively manage the community without the support of his employees."*

31.     None of the plaintiff's employees directly complained to him regarding his behavior.

32.     The plaintiff's anxiety and depression, exacerbated by his supervisor and those at her direction, affected the plaintiff's ability to interact effectively with his employees.

## COUNT V – WRONGFUL DISCHARGE AND RETALIATION FOR FILING A DISCRIMINATION CLAIM WITH THE EEOC

33.     The plaintiff re-alleges and incorporates paragraphs 1-32.

34.     The plaintiff filed an EEOC charge on July 19, 2015 for retaliation for taking FMLA and violation of the ADA.

35.     The defendants terminated the plaintiff on August 7, 2015, two days after receiving the notice of the plaintiff's EEOC claims from the EEOC. Notice was received by the employer on August 5, 2015.

**WHEREFORE**, the plaintiff in this cause requests that the Honorable Court Order:

a. Order the defendants to pay compensatory damages, actual and general in an amount exceeding $75,000 for each Count and applicable violation of an Act;

b. Award punitive damages;

c. Order injunctive relief by way of employee discrimination training;

d. Award court costs and attorneys fees;

e. Any other relief deemed equitable.

### Jury Demand

The plaintiff, by and through counsel, hereby maintains his demand for trial by jury.

*Dated:*

/s/ _____Ross Termaat_____

*Ross Termaat, Plaintiff*

Submitted By:

Beebe Law Group PLLC

/s/ ____Amber D. Beebe_____
By: Amber D. Beebe
Attorney for Plaintiff
Mail: P.O. Box 1984
Portage, MI 49081
3700 East Milham Avenue, Suite A
Portage, MI 49002
(269) 873-4086
amber@beebelawgroup.com